UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE M. FALLAT, DPM,

       Plaintiff,

vs.

CASE NO. 08-14875
HON. LAWRENCE P. ZATKOFF

CRYOMED, LLC,

       Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on April 24, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

On November 20, 2008, Plaintiff filed a motion for preliminary injunction and temporary restraining order [dkt 2]. The Court denied Plaintiff's motion for a temporary restraining order and set a hearing date for Plaintiff's motion for preliminary injunction. Prior to the hearing, the parties stipulated to a consent order pending settlement discussions. The Court entered the stipulated order on January 12, 2009. The parties failed to settle the case, however, and the Court once again set a hearing date to entertain Plaintiff's motion for preliminary injunction. Three days prior to the scheduled hearing, Defendant submitted its response to Plaintiff's motion for preliminary injunction. The Court struck this document as untimely and proceeded with the preliminary-injunction hearing on April 14, 2009. For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's motion for preliminary injunction.

## II. BACKGROUND

Over the course of Plaintiff's podiatry career, he created and developed a surgical method for treating Morton's Neuroma and Plantar Fasciitis using a cryogenic probe. On February 22, 2002, Plaintiff assigned his treatment technology to Cryomed Group in return for a royalty. On June 1, 2003, Plaintiff executed an agreement with a different company, Cryogenic Technology, whereby Plaintiff was compensated for each device the latter sold that incorporated Plaintiff's technology. Cryomed Group and Cryogenic Technology both failed to observe the terms of their agreements with Plaintiff and ultimately went out of business.

On July 31, 2007, the United States Patent and Trademark Office issued Plaintiff U.S. Patent No. 7,250,046. The patent applies to Plaintiff's "method for treating plantar fasciitis." The patent does not apply to any device or machine used in performing Plaintiff's method.

At some point, a new entity called Cryomed, LLC, emerged for the purpose of selling CryoPac Units, which allegedly facilitate performance of Plaintiff's patented method. On May 2, 2008, Plaintiff sent Defendant a letter informing it that the CryoPac Units infringed on Plaintiff's patent. At that time, Plaintiff also demanded that Defendant cease and desist its manufacture, sale, and marketing of the CryoPac Units. Plaintiff offered a licensing agreement to Defendant, but Defendant never responded to the offer. To date, Defendant continues its production of the CryoPac Units. Prior to the stipulation between the parties, Defendant had included in its marketing of the Units various pictures, testimonials, and videos of Plaintiff that Cryomed Group and Cryogenic Technology had previously been authorized to use.

## III. LEGAL STANDARD

The Court is to consider the following four factors in determining whether a plaintiff is

entitled to preliminary injunctive relief:

> (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits;
>
> (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;
>
> (3) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and
>
> (4) whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).  The standard for a preliminary injunction is not a rigid and comprehensive test; the four factors are elements to be balanced, not prerequisites that must be satisfied. *In re Eagle-Picher Indus., Inc.* 963 F.2d 855, 859 (6th Cir. 1992) ("[T]hese factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements."). Thus, a lesser showing of irreparable injury may not preclude the issuance of an injunction if the moving party establishes a strong likelihood of success on the merits. *See, e.g.*, *Roth v. Bank of Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978) (citation omitted).

## IV.  ANALYSIS

**A.  LIKELIHOOD OF SUCCESS ON THE MERITS**

Plaintiff includes three counts in his complaint: inducing infringement of the '046 patent, contributory infringement of the '046 patent, and defamation.  In demonstrating a likelihood of success on the merits, "it is ordinarily sufficient if the [p]laintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and

3

thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997).

Proof of infringement at all stages of litigation involves two steps. First, the Court conducts what is referred to as "claim construction" in which it determines the scope of the claims as a matter of law. In doing so, the Court first considers the language of the patent claims themselves. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). The Court gives full breadth to the ordinary meaning of all terms as understood by one of skill in the art, unless otherwise defined. *ACTV, Inc. v. The Walt Disney Co.*, 346 F.3d 1082, 1091 (Fed. Cir. 2003). Second, the Court compares the accused product to the construed claim to determine whether it constitutes an infringement. *Tate Access Floors, Inc. v. Maxcess Tech., Inc.*, 222 F.3d 958, 964 (Fed. Cir. 2000).

A product may be infringed either directly or indirectly. The former type of infringement occurs when a party makes, uses, sells, or offers to sell all of the elements of a claimed device or practices all of the elements of a claimed method. 35 U.S.C. § 271(a). Indirect infringement, in contrast, occurs when a party causes another to infringe a patent through either contributory infringement or inducement to infringe. To establish indirect infringement, the patentee must establish at least circumstantially that a direct infringement has occurred or may occur. *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004).

### 1. *Inducing Infringement*

Inducement to infringe occurs under 35 U.S.C. § 271(b) when "there has been direct infringement," and "the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (quoting *Minn. Mining & Mfg. Co. v. Chemque,*

*Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002). Although proof of intent is vital to such claims, "direct evidence is not required; rather, circumstantial evidence may suffice." *Id.* (quoting *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)).

Defendant is well aware of Plaintiff's patent. Although many, if not all, of the materials regarding Plaintiff have been removed from Defendant's website pursuant to the parties' stipulation, Defendant previously acknowledged the patent in its advertisements and expressly taught Plaintiff's method using a CryoPac Unit. The text on Defendant's website virtually mirrored the text of Plaintiff's patent claims. Further, Defendant utilized a ten-minute video of Plaintiff on its website in which Plaintiff practiced the patented method. Defendant, however, is in the business of selling CryoPac Units, which serve multiple purposes and do not, in and of themselves, infringe on Plaintiff's patented method. Under these circumstances, Plaintiff has made a strong showing that he will be successful on his claim of inducing infringement as it pertains to the use of his image and likeness in demonstrative pictures and videos but not as it pertains to the actual CryoPac Units.

### 2. *Contributory Infringement*

Contributory infringement arises when one offers to sell or sells a "material or apparatus for use in practicing a patented process, . . ., knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). *See also C.R. Bard, Inc. v. Adv. Cardiovascular Sys. Inc.*, 911 F.2d 670, 673 (Fed. Cir. 1990). Contributory infringement may be established through direct or circumstantial evidence. *Metabolite Labs., Inc.*, 370 F.3d at 1365.

In this case, Plaintiff contends that Defendant is knowingly selling a non-staple good for use in practicing Plaintiff's patented procedure. Plaintiff further avers that Defendant's CryoPac Units

5

are a material component in practicing the method described in Plaintiff's patent. According to Plaintiff, the use of his picture and likeness on Defendant's website is further evidence of direct infringement by Defendant. Defendant counters that other techniques can be used in conjunction with its CryoPac Units.

The fact that the CryoPac Units are used in a variety of surgeries suggest that they are "capable of commercially significant noninfringing uses." *Sony Corp. v. Univ. City Studios, Inc.*, 464 U.S. 417, 442 (1984). Although the Court has not been presented with the specifics of alternate noninfringing uses, "an injunction which seeks to deprive the public of the very tool or article of commerce capable of some noninfringing use would be an extremely harsh remedy, as well as one unprecedented in copyright law." *Univ. City Studios, Inc. v. Sony Corp.*, 480 F. Supp. 429, 468 (C.D. Cal. 1979). For the purposes of a preliminary injunction, then, Plaintiff has not shown a likelihood of success on the merits of his contributory-infringement claim with respect to the CryoPac Units. In contrast, Plaintiff has shown a likelihood of success on the merits with respect to the use of his name, image, and likeness in demonstrative pictures in Defendant's marketing materials.

### *3. Defamation*

Although Plaintiff does not include his count of defamation in his motion for a preliminary injunction, it is the third and final count of his complaint. In order to establish a claim for defamation, "a plaintiff must show that the defendant 1) made a 'false and defamatory statement concerning the plaintiff'; 2) communicated the statement to a third party without privilege; and 3) acted with 'fault amounting to at least negligence.'" *Williams v. Detroit Bd. of Educ.*, No. 07-2520, 2009 U.S. App. LEXIS 1051, at *8 (6th Cir. Jan. 15, 2009) (quoting *Royal Palace Homes v. Channel*

*7 of Detroit*, 495 N.W.2d 392, 393–94 (Mich. 1992)).

Plaintiff alleges that Defendant defamed him by virtue of a false caption on Defendant's website that suggests Plaintiff provided his photograph and video footage to Defendant. Although the statement in the caption may be false or misleading, it is not defamatory. Therefore, Plaintiff has not established a strong case for success on his defamation claim.

**B.     IRREPARABLE HARM TO PLAINTIFF**

The Michigan Supreme Court has noted that a harm "is irreparable when it cannot be adequately compensated in damages, or when there exists no pecuniary standard for measurement of damages due to the nature of the right or property injured." *Ainsworth v. Hunting & Fishing Club*, 116 N.W. 992, 994 (Mich. 1908). Plaintiff maintains that Defendant's infringement precludes him "from entering into exclusive licenses with third-parties of his choosing, and diminishes the value of such license opportunities to him and his licensees." Plaintiff's injuries from lost royalties, sales, and licensing agreements can most likely be remedied by an award of damages. Specifically, Defendant contends that it has sold only 30 CryoPac Units to date. Given such a relatively modest output, damages computations should not be difficult. Accordingly, this factor favors Defendant.

**C.     IRREPARABLE HARM TO OTHERS**

In considering whether to issue a preliminary injunction, the Court may consider "whether it will preserve the status quo so that a final hearing can be held without either party having been injured and whether it will grant one of the parties final relief prior to a hearing on the merits." *Campau v. McMath*, 463 N.W.2d 186, 189 (Mich. Ct. App. 1990).

Granting the preliminary injunction will probably have some negative impact on Defendant.

7

Depending on what percentage of Defendant's sales actually relate to Plaintiff's patent, the harm to Defendant could be potentially crippling. Defendant also claims that hospitals, physicians, and patients will be injured if Defendant is enjoined from operating its business. Further, preserving the status quo cannot significantly injure Plaintiff, as Plaintiff waited at least six months after notice of the infringement to file suit. This factor therefore favors Defendant.

**D.    IMPACT ON THE PUBLIC INTEREST**

The public has a substantial interest in the "protection of the rights secured by . . . valid patents." *Smith Int'l Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). At the same time, the public has a substantial interest in access to medical technology. Accordingly, this factor does not significantly advance either party's argument.

## V.  CONCLUSION

After considering the factors set forth above, the Court orders as follows:

IT IS HEREBY ORDERED that Defendant cease all use of Plaintiff's name, likeness, or patented technique in any commercial advertisement or promotion of any type whatsoever, for any product or service, including, but not limited to, Defendant's websites, videos, and printed publications and materials. This order DOES NOT EXTEND TO OR OTHERWISE IMPACT Defendant's use, manufacture, sale, promotion, or importation of CryoPac Units, including the CryoPac, CryoPac Plus, CryoPac Advance, and CryoPac Ultra.

IT IS SO ORDERED.

Date: April 24, 2009

s/Lawrence P. Zatkoff
Hon. Lawrence P. Zatkoff
United States District Court Judge